DECISION AND JUDGMENT ENTRY
{¶ 1} This case is before the court on appeal from the judgment of the Erie County Court of Common Pleas, Juvenile Division, which denied the motion for change of custody filed by appellant, Robert S., and ordered that appellant's minor son, Christian, remain in the custody of his maternal grandmother, Charl G., appellee. For the reasons that follow, we reverse the decision of the juvenile court. *Page 2 
 {¶ 2} The relevant facts are as follows. In a previous action, appellant established his paternity of Christian. On December 26, 1999, appellant and birth mother of Christian entered into a shared parenting plan that stated "[w]hile the minor child is in the possession of Mother or Father respectively, that parent shall be considered the residential parent and legal custodian," but that the mother's residence "shall be considered the legal residence of the child for school registration purposes." On February 1, 2000, a Final Shared Parenting Decree was filed with the juvenile court. Christian and his mother lived with appellee at that time.
 {¶ 3} On April 22, 2002, appellee filed the instant action and sought custody of Christian, alleging that he had been voluntarily left by his mother in appellee's care. Christian's mother did not enter an appearance in this case. Except for approximately one and one-half months when he moved out of appellee's home with his mother, Christian lived with appellee since birth. Appellant lived with his parents in 2002, but testified that he was otherwise capable of caring for Christian.
 {¶ 4} Nevertheless, on August 2, 2002, appellant filed a consent judgment entry designating appellee as "the residential parent for school registration purposes." Appellant testified that it was his understanding that nothing would change and that when he was able to get his own place, he "was going to go for full custody and get him." The judgment stated that the February 1, 2000 decree was incorporated into the new agreement and that appellant "shall retain all rights as set forth in the Final Shared Parenting Decree." The parties' August 2002 agreement further stated: *Page 3 
 {¶ 5} "The parties understand that this entry will not prejudice [appellant's] ability to petition the Court at a later date for custody. The Court, at that time, will make its decision based on the best interests of the minor child, only."
 {¶ 6} Christian continued living with appellee pursuant to the parties' agreement. Appellee enrolled Christian in school, Sunday school, and other activities such as bowling. Appellee took Christian to doctor's appointments when needed and otherwise managed his care. Christian's half-sibling lived with him in appellee's home. Appellant paid his support obligations to appellee and had Christian for overnight visitation, every other weekend, since 2002.
 {¶ 7} On March 19, 2004, after getting married and moving from his parents' home, appellant filed a motion for change of custody. Appellant averred that he was previously not in a position to be the residential parent, but that he retained "his rights pursuant to the Shared Parenting Decree," filed February 1, 2000, and was "now in a position to assume the role of being the residential parent for his son."
 {¶ 8} A trial was held on January 24 and 25, 2005 and on March 15, 2005. Appellee asserted that she was given custody by appellant in 2002 and that only a "best interests" determination applied to appellant's motion for change of custody. Appellant, however, asserted that, as a suitable parent, he has a paramount right to custody, in accordance withIn Re Perales (1977), 52 Ohio St.2d 89, which states:
 {¶ 9} "In an R.C. 2151.23(A)(2) child custody proceeding between a parent and a nonparent, the hearing officer may not award custody to the nonparent without first *Page 4 
making a finding of parental unsuitability that is, without first determining that a preponderance of the evidence shows that the parent abandoned the child, that the parent contractually relinquished custody of the child, that the parent has become totally incapable of supporting or caring for the child, or that an award of custody to the parent would be detrimental to the child." Id. at syllabus.
 {¶ 10} On April 13, 2005, the magistrate stated that the following legal issue was presented:
 {¶ 11} "The controverted issue is whether any contractual relinquishment of custody was contemplated or done by the August 2002 Judgment Entry. While [appellant] retained all `rights as set forth in the Final Shared Parenting Decree filed in this Court on February 1, 2000' he also agreed to allow the Court to make a further determination `based on the best interests of the minor child, only.' In doing so he did relinquish certain rights, albeit Perales requirements that [appellee] would have had to meet in a normal custody dispute. As such, the Magistrate finds that this does meet the contractual relinquishment standard of Perales and father's argument for enforcement of the requirements of the entire decision is not well taken. The best interests standard shall be solely applied."
 {¶ 12} The magistrate held that "[n]o testimony shows that [appellant] is unsuitable" as a parent, but found that the preponderance of the evidence established that it was in Christian's best interests to remain in appellee's custody. Specifically, the magistrate found that Christian had bonded with his half-sibling, who also lived with *Page 5 
appellee, and that removal would be traumatic for Christian. Appellant filed objections with the juvenile court.
 {¶ 13} On August 25, 2006, the juvenile court approved and modified the magistrate's decision, finding that appellee should be designated residential parent and legal custodian, and ordering the court's standard visitation schedule if the parties could not otherwise agree to a schedule. In particular to the dispute on appeal, the juvenile court framed the issue before it as follows:
 {¶ 14} "Father appears to argue first that he entered into a shared parenting plan with Grandmother. He argues that he is entitled to the protections afforded a parent who is suitable as outlined in the case ofIn Re Perales, (1977), 52 Ohio St.2d 89. In other words, he believes that since he is a suitable parent he must be granted custody over Grandmother. Nothing more (i.e. change of circumstance) need be proved for the Court to order the change."
 {¶ 15} In determining the issue, the juvenile court held that appellant did not enter into a shared parenting plan with appellee because R.C. 3109.04(G) only allows for shared parenting between parents, not a parent and a nonparent. The court further held that "[w]hile the [August 2, 2002] Judgment Entry is written with reference to the former shared parenting plan it can only be interpreted to be a designation of Grandmother as sole legal custodian of child." The juvenile court held that the requirement in Perales, that a finding of unsuitability was necessary in parent and nonparent custody disputes, only applied "to original custody determinations," as set forth inMasitto v. Masitto *Page 6 
(1986), 22 Ohio St.3d 63, and that appellant's motion for change of custody was not the original custody determination in this case. The juvenile court stated:
 {¶ 16} "In [Masitto], the Supreme Court decided that once a parent agrees to relinquish, contractually, his parental rights and responsibilities to a nonparent any subsequent change requests would follow the best interests test contained in ORC 3109.04. The facts of this case clearly support the conclusion that Father contractually (by agreed entry) relinquished his rights to custody and control in favor of Grandmother. * * * Father's arguments about the voluntariness or his understanding of the legal implications of the agreements are outweighed by the fact that he not only testified that he sought the assistance of counsel but that counsel also executed the agreed entry approved by the Court. No other evidence tended to show that the advice was misleading or improper."
 {¶ 17} In reviewing the facts of the case, the juvenile court held that there had been a change in appellant's circumstances since he had gotten married and found suitable housing. The court, however, found that "[w]hile both homes have positive aspects, the harm of making a custody change would not be outweighed by its advantages" because "[t]he child not only wants to stay where he is now, he is well established in Grandmother's home including her family and the loss of his `brother's' companionship would be great."
 {¶ 18} Appellant appealed the August 25, 2006 decision of the juvenile court and raises the following assignments of error: *Page 7 
 {¶ 19} "Assignment of Error No. 1
 {¶ 20} "The trial court erred in its finding that appellant contractually relinquished fundamental parental rights voluntarily and knowingly giving up his rights with respect to custody and thus failed to apply the legal principle that a parent has a paramount right to custody of his child against a nonparent.
 {¶ 21} "Assignment of Error No. 2
 {¶ 22} "The trial court erred in finding that the appellant had contractually relinquished custody to the nonparent appellee."
 {¶ 23} Appellant's assignments of error are intertwined and we therefore will consider them together. Appellant argues that the trial court erred in finding that he contractually relinquished his fundamental parental rights. Specifically, appellant asserts that he "did not knowingly nor intentionally give legal custody' to the child's grandmother." Rather, appellant asserts that he "believed that [appellee] was simply being substituted for his child's mother in the Shared Parenting Plan," and that he was preserving all of his rights to pursue custody of his son in the future. Appellant also asserts that the "best interest of the child" language was carried forward from the shared parenting plan, where it was the correct standard; however, it was not his intention that this language would act as "an absolute relinquishment of his fundamental right and interest in the care, custody and control of his child." Appellant argues that he was never advised that he was giving up a fundamental right in entering into the agreement with appellee, and that based upon the extent of involvement in his son's life, it is *Page 8 
"inconceivable to conclude that he knowingly and intelligently surrendered or contracted away his rights."
 {¶ 24} Appellee responds on appeal that appellant contractually relinquished (i.e., voluntarily consented to) legal custody to appellee in August 2002. Thus, appellee asserts that appellant's request for change of custody in March 2004, was not an original custody action andPerales does not apply to this case. Rather, appellee asserts that a "best interests" determination was appropriate and that the trial court did not abuse its discretion in awarding appellee custody.
 {¶ 25} In custody cases between a parent and a nonparent, the overriding principle "is that natural parents have a fundamental liberty interest in the care, custody, and management of their children," which is protected by due process. In re Hockstok (2002), 98 Ohio St.3d 238, ¶ 16. In original custody disputes between a parent and a nonparent, "`parents who are "suitable" persons have a "paramount" right to the custody of their minor children unless they forfeit that right by contract, abandonment, or by becoming totally unable to care for and support those children.'" Masitto v. Masitto (1986), 22 Ohio St.3d 63,65, citing Perales, 52 Ohio St.2d at 97. Thus, "[i]n a child custody case arising out of a parentage action between a natural parent of the child and a nonparent, a trial court must make a parental unsuitability determination on the record before awarding legal custody of the child to the nonparent." Hockstok at syllabus.
 {¶ 26} Regarding a finding of unsuitability, the Ohio Supreme Court has held that it does "not intend a finding of unsuitability to connote only some moral or character *Page 9 
weakness; instead, it is designed to indicate that contractual relinquishment of custody, abandonment, complete inability to provide care or support, or that parental custody would be detrimental to the child, has been proved by a preponderance of the evidence."Perales at 99. Although a finding of unsuitability must be made on the record, "once an original custody award has been made, the general rule is that such award will not be modified unless `necessary to serve the best interest of the child.'" Masitto at 65, citing R.C. 3109.04(B).
 {¶ 27} In determining whether a parent has contractually relinquished his or her fundamental parental rights, thus becoming unsuitable, the Ohio Supreme Court has made the following findings. In Perales, the mother had "signed and had notarized an agreement giving custody" of her child to a nonparent, with whom she had immediately placed the child upon birth. Even under these circumstances, the court held that the evidence in the record was insufficient to enter a finding that the mother had contractually relinquished and forfeited her right to custody. Perales, 52 Ohio St.2d at 99. In Masitto, however, the father was found to have relinquished his rights when he consented to the grandparents becoming the child's guardians in probate court.Masitto, 22 Ohio St.3d 63. In explaining its rationale inMasitto, the Ohio Supreme Court stressed the importance of the fact that the father had been determined to be unsuitable, pursuant to R.C.2111.06, by the probate court when it made the grandparents the child's guardians. Hockstok, 98 Ohio St.3d 238 at ¶¶ 22 and 29. *Page 10 
 {¶ 28} In this case, the juvenile court found that appellant had relinquished his parental rights by granting legal custody to appellee in the parties' agreed judgment entry dated August 2, 2002. Although the juvenile court did not state that this relinquishment made appellant "unsuitable," according to Perales, a parent is "unsuitable" when he has contractually relinquished custody. Perales at 99. As such, we find that the juvenile court did enter a finding of unsuitability as to appellant prior to denying appellant's motion for change of custody. Appellant, however, asserts that the trial court erred in finding that he had contractually relinquished his fundamental parental rights and, thus, failed to apply the legal principle that a parent has a paramount right to custody of his child against a nonparent.
 {¶ 29} For purposes of review, "[w]hether or not a parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding." Masitto, 22 Ohio St.3d at 66, citing C.E. Morris Co. v.Foley Constr. Co. (1978), 54 Ohio St.2d 279. More specifically, however, a finding of unsuitability based upon contractual relinquishment of custody must be "proved by a preponderance of the evidence."Perales at 99.
 {¶ 30} With respect to judicial examination of any written instrument, the cardinal purpose is to ascertain and give effect to the intent of the parties. Foster Wheeler Enviresponse, Inc. v. Franklin Co.Convention Facilities Authority (1997), 78 Ohio St.3d 353, 361. "The intent of the parties to a contract is presumed to reside in the language *Page 11 
they chose to employ in the agreement." Id., citing Kelly v. Med. LifeIns. Co. (1987), 31 Ohio St.3d 130, paragraph one of the syllabus.
 {¶ 31} In this case, the Shared Parenting Decree between appellant and the mother stated that "[w]hile the minor child is in the possession of Mother or Father respectively, that parent shall be considered the residential parent and legal custodian." Pursuant to R.C. 3109.04(K)(5), the decree therefore provides that "both parents have `custody of the child' or `care, custody, and control of the child.'" As such, whenever Christian was with appellant, appellant was considered to be "the residential parent and legal custodian."
 {¶ 32} When appellant allowed appellee to become "the residential parent for school registration purposes," it is clear that appellant attempted to retain his status as "legal custodian," whenever Christian was with him, by including the following language in the parties' August 2, 2002 agreement and judgment entry:
 {¶ 33} "[Appellant] shall retain all rights as set forth in the Final Shared Parenting Decree * * *. The parties understand that this entry will not prejudice [appellant's] ability to petition the Court at a later date for custody."
 {¶ 34} The juvenile court accepted the parties' agreement and entered it into judgment on August 2, 2002; however, when determining appellant's motion for change of custody, the court disregarded any reference to the Shared Parenting Decree on the basis that no shared parenting plan, pursuant to R.C. 3109.04, can exist between a parent and a nonparent. Without reference to a shared parenting plan, the juvenile court held *Page 12 
that the agreement could only act to grant appellee sole legal custody of Christian. In so doing, we find that the juvenile court failed to give effect to the parties' intent.
 {¶ 35} We agree that appellee was given legal custody and, in fact, did care for Christian, and provide food, shelter, education and medical care. See R.C. 2151.011(B)(19). However, by definition, "legal custody" is "subject to any residual parental rights, privileges, and responsibilities." Id. The parties in this case clearly intended for appellant to retain his fundamental parental rights when they attempted to incorporate the terms of the Shared Parenting Decree into their August 2, 2002 agreement. Thus, even if R.C. 3109.04 does not provide the parameters for a shared parenting plan between a parent and a nonparent, we find that appellee was not granted sole legal custody in the parties' August 2, 2002 judgment entry. Rather, as provided for in the agreement, appellee was granted legal custody for purposes of school registration, but appellant retained his status as "the residential parent and legal custodian" of Christian during the times they were together. Accordingly, because of the parties' reservation of rights on appellant's behalf, we find that appellant did not contractually relinquish his fundamental parental rights.
 {¶ 36} Moreover, based upon the parties' reservation of rights on appellant's behalf, and their agreement that appellant not be "prejudiced," we find that the parties' August 2, 2002 agreement is more akin to a grant of "temporary custody" to appellee; rather than a grant of "legal custody." See R.C. 2151.011(B)(19) and (53). "Temporary custody' means legal custody of a child who is removed from the child's home, which *Page 13 
custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement." R.C. 2151.011(B)(53). A grant of temporary custody is not a contractual relinquishment of a natural parent's custodial rights and, therefore, does not render a parent "unsuitable." Hockstok, 98 Ohio St.3d at 245.
 {¶ 37} We therefore find that there is no reliable, credible evidence upon which the juvenile court could have relied in finding that appellant granted sole legal custody to appellee. Unlike the facts inMasitto, where the father was found to be unsuitable, pursuant to statute, when he relinquished his parental rights, the parties in this case agreed that appellant would retain his parental rights and that he would not be prejudiced by their August 2, 2002 agreement and judgment entry.
 {¶ 38} Nevertheless, despite appellant's clear attempt to reserve his parental rights, the juvenile court deleted any reference to the Shared Parenting Decree and declared that appellant intended to grant appellee sole legal custody in the August 2, 2002 judgment entry. The court noted that appellant was precluded from asserting that he did not understand the legal implications of the agreement because he testified that he had the agreement reviewed by counsel. However, since the agreement contained a reservation of appellant's parental rights, we fail to see how appellant could have been advised that he was relinquishing his paramount right to custody. Additionally, the juvenile court's findings clearly prejudice appellant's ability to have custody of his son, which is also contrary to the parties' agreement. *Page 14 
 {¶ 39} Furthermore, even if the language used by the parties was insufficient in the juvenile court's opinion to reserve appellant's fundamental parental rights, we note that the juvenile court approved the parties' agreement and entered it into judgment. We are troubled that the juvenile court approved an agreement that it considers to be legally unenforceable without determining the parties' intentions at that time it ratified their agreement. Perhaps the juvenile court could have been more thorough at the time to determine the breadth and legal ramifications of the agreement.
 {¶ 40} Based upon our review of the record, we find that the evidence does not establish by a preponderance of the evidence that appellant contractually relinquished his fundamental parental rights, including his paramount right to have custody and provide care for his child. Because of the parties' reservation of rights on appellant's behalf, we find that there was no evidence establishing that appellant intended to relinquish his fundamental rights when he gave appellee custody for school registration purposes. We therefore find that appellant maintained his paramount right to custody and that the language in the parties' August 2, 2002 agreement regarding further custody determinations being made "on the best interests of the minor child, only," violates appellant's fundamental rights, is contrary to law, and unenforceable in this case.
 {¶ 41} Based upon the foregoing, we find that the trial court erred in finding that appellant was "unsuitable" because he knowingly relinquished his fundamental parental rights and granted appellee sole legal custody of Christian. Rather, we find that this case is similar toPerales, in that there was a grant of custody to a nonparent, but the record *Page 15 
was otherwise insufficient to establish that the parent intended to relinquish her fundamental parental rights. See Perales, supra. Appellant's first and second assignments of error are therefore found well-taken.
 {¶ 42} On consideration whereof, the court finds substantial justice has not been done the party complaining and the judgment of the Erie County Court of Common Pleas, Juvenile Division, is reversed. This matter is remanded to the trial court for further proceedings in accordance with this decision. Appellee is ordered to pay the costs of this appeal pursuant to App.R. 24. Judgment for the clerk's expense incurred in preparation of the record, fees allowed by law, and the fee for filing the appeal is awarded to Erie County.
JUDGMENT REVERSED.
A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. See, also, 6th Dist.Loc.App.R. 4.
 Peter M. Handwork, J., Arlene Singer, J., William J. Skow, J., CONCUR. *Page 1