[Cite as *In re V.M.B.*, 2013-Ohio-4298.]

# IN THE COURT OF APPEALS

# ELEVENTH APPELLATE DISTRICT

# PORTAGE COUNTY, OHIO

|                              |   |                      |
|------------------------------|---|----------------------|
|                              | : | **O P I N I O N**    |
| IN THE MATTER OF: V.M.B.     |   |                      |
|                              | : | **CASE NO. 2012-P-0112** |

Civil Appeal from the Portage County Court of Common Pleas, Juvenile Division.
Case No. 2006 JCG 00501

Judgment: Affirmed.

*Joy S. Wagner*, 507 West Park Avenue, Barberton, OH 44203 (For Appellant Mindy Bilby).

*David P. Drew*, 141 Broad Boulevard, Suite 206, Cuyahoga Falls, OH 44221 (For Appellee Lisa Marie Bilby).

TIMOTHY P. CANNON, P.J.

{¶1} Appellant, Mindy Bilby ("Aunt"), appeals from the August 10, 2012 judgment of the Portage County Court of Common Pleas, Juvenile Division, which overruled her objection to the magistrate's decision and ordered that she return custody of V.M.B. ("minor child") to appellee, Lisa Marie Bilby ("Mother"), the biological mother.

{¶2} The minor child was born on July 28, 2005. Paternity has not been established.

{¶3} On June 1, 2006, Frank Bilby ("Uncle") and Aunt filed a petition for custody alleging Mother was unable to care for her daughter. Mother filed an answer

consenting to the grant of the petition and the award of legal custody of her daughter to Aunt and Uncle.

{¶4} A hearing was held before the magistrate on July 7, 2006. Aunt and Uncle appeared for the hearing; Mother did not attend. At the hearing, the magistrate instructed the following:

{¶5} THE COURT: Folks, we have you in here so that you, we want to make sure you understand what this is all about and both what you're getting into and what you're not getting into.

{¶6} This is a request for custody placing [the minor child] in your legal custody. It does not in any way affect the parental rights of [Mother] and, in fact, when we grant these motions for custody, it's done purely for the convenience of the parties. It's undoable on a moment's notice. In other words if she says I want my child back and comes back to court and says I want my child back, we will immediately return legal custody to her. This is not the type of case that sets up any hurdles or burdens for her to overcome in order to get her child back. Again, it's just done for the assumption it's for the convenience of the parties meaning yourself and her. And, if she changes her mind and she's immediately entitled to do that and to seek the return of legal custody. Just so we understand that. Okay.

{¶7} * * * You don't have permanent parental rights and, again, you don't take on any of [Mother's]. She retains those. Do you understand that?

{¶8} [AUNT]: Yes.

{¶9} THE COURT: Any questions about that?

{¶10} [AUNT]: No.

{¶11} * * *

{¶12} THE COURT: Well, the court's going to grant your petition. We'll place the child in your legal custody. * * * Like I said, in the event that [Mother] wishes to seek return of custody, you'll come back to court and we'll immediately grant it to her. Just so you know that. * * *

{¶13} [UNCLE]: The one other question I have is: Down the road at what point in time are we able to try to seek permanent custody? * * *

{¶14} THE COURT: You can't. The only entity that will seek permanent custody is children's service agencies such as Portage County Department of Job and Family Services. Permanent custody has a very specific meaning in Ohio's law and it gets kind of confused in a lot of discussions with what it is and what it isn't. It's only something that can go to the department. It means that a person loses all parental rights when a child's service agency, the Department of Job and Family Services would take permanent custody. Other people can adopt a child. Adoption is an entirely different process where she might be willing to give up her parental rights and allow the child to be adopted. That's not what this is about. This does not automatically lead into something like that. So, the fact that of the status we've given you in this case as legal custodians that's like the maximum that we could do in this court. All right. Okay.

{¶15} [UNCLE]: Thank you very much.

{¶16} [AUNT]: Thank you.

{¶17} The magistrate issued a decision finding that the parties agreed that the change of custody was in the best interest of the child; "that it is for the convenience of the parties; and that it is subject to the ongoing jurisdiction of the court." The magistrate did not make a finding regarding the suitability of Mother. The trial court adopted the decision of the magistrate.

{¶18} Five years later, on February 27, 2012, Mother filed a motion for legal custody. In her motion, Mother stated there "exists a change of circumstances necessitating the modification and/or vacation of the prior Order of the Court granting Legal custody of the minor child to Uncle and Aunt, Frank and Mindy Bilby."

{¶19} The magistrate issued a decision, which was adopted by the trial court, returning custody of the minor child to Mother. Thereafter, Aunt filed objections noting that custody was transferred without her prior notification.

3

{¶20} A hearing was held. The trial court found that the parties should have been notified and a hearing held prior to issuing a decision on Mother's motion for legal custody. The trial court vacated the magistrate's decision and recommitted the matter to the magistrate for a hearing.

{¶21} Subsequently, Aunt filed a verified complaint for legal custody. In her complaint, Aunt sought continued legal custody of the minor child. In addition, Aunt alleged that Mother abused drugs and alcohol, has a criminal record, and has been incarcerated on two occasions. Mother filed an answer denying the allegations of Aunt's complaint.

{¶22} After a hearing, the magistrate issued a decision stating that at the July 7, 2006 hearing, it was made apparent to the parties that "immediately upon the mother's request for the return of legal custody that her motion would be granted." The magistrate's decision stated that the "mother's motion for return of legal custody [is] granted for precisely the reasons that were explained to the Petitioners at the original hearing on their petition."

{¶23} Aunt filed objections to the magistrate's decision, and Mother filed a response.

{¶24} A hearing was held before the trial court on August 3, 2012. The trial court overruled Aunt's objections, adopted the magistrate's decision, and ordered Aunt to return custody of the minor child to Mother. The trial court found that the transfer of custody from Mother to Aunt and Uncle "was made for the convenience of the Parties without any determination of the suitability of the Parties. All Parties were informed of this and that the child shall be returned at the request of the child's mother."

**{¶25}** Aunt filed a timely appeal and asserts the following assignment of error:

> The trial court abused its discretion and erred as a matter of law by returning custody of the minor child to her Mother without an evidentiary hearing on the Legal Custodian's complaint to continue legal custody and request that the court find the Mother to be an unsuitable parent, all in violation of Appellant's right to due process of law under the Ohio and United States Constitutions.

**{¶26}** The Ohio Supreme Court has held that a trial court has broad discretion in determining custody matters. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996). Consequently, we can only sustain a challenge to a trial court's custody decision upon a finding that the trial court abused its discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

> **{¶27}** Parents have a fundamental right to the custody and care of their children. See *Bragg v. Hatfield,* 152 Ohio App.3d 174, 2003-Ohio-1441, 787 N.E.2d 44. 'In custody cases between a parent and a nonparent, the overriding principle "is that natural parents have a fundamental liberty interest in the care, custody, and management of their children," which is protected by due process.' *In re Christian S.,* Erie App. No. E-06-066, 2007-Ohio-5750, ¶25, quoting *In re Hockstok,* 98 Ohio St.3d 238, 2002-Ohio-7208, ¶16, 781 N.E.2d 971. 'Where a person accepts the custody of a child by virtue of an agreement with the parents of the child, the contract may be such, and the care and support may be furnished for such a length of time and under such circumstances as to estop the parents from denying that they have relinquished or forfeited their natural right to the custody of the child.' *Masitto v. Masitto* (1986), 22 Ohio St.3d 63, 66, 22 Ohio B. 81, 488 N.E.2d 857.

*In re B.S.*, 12th Dist. Preble No. CA2010-05-007, 2011-Ohio-47 (overruled on other grounds).

**{¶28}** Aunt maintains that because her verified complaint contained sufficient indicia of parental unsuitability to warrant an evidentiary hearing, she had a right to notice and the opportunity to be heard. Citing to an Ohio Supreme Court opinion, Aunt alleges it is clear that *all* parties, including nonparents who have been awarded custody, are entitled to a hearing on the issue of unsuitability. *Hockstok v. Hockstok*, 98 Ohio St.3d 238 (2002). In *Hockstok*, the Court held: "In a child custody case arising out of a parentage action between a natural parent of the child and a nonparent, a trial court must make a parental unsuitability determination on the record *before* awarding legal custody of the child to the nonparent." *Id.* at syllabus.

**{¶29}** Here, the trial court never made a determination of unsuitability with respect to Mother. In fact, the trial court made it clear, both in the original entry and at the hearing where custody was first granted, that it was specifically not making such a finding. Under the facts of this case, we do not agree that *Hockstok* requires an unsuitability hearing when removing a child from a nonparent and placing the child with a natural parent.

**{¶30}** The merits of this case in large part rest upon the impact of the original July 2006 judgment which granted "legal custody" to appellant.

**{¶31}** "Legal custody" means "a legal status that vests in the custodian the right to have physical care and control of the child and to determine where and with whom the child shall live, and the right and duty to protect, train, and discipline the child and to provide the child with food, shelter, education, and medical care, *all subject to any residual parental rights, privileges, and responsibilities.*" (Emphasis added.) R.C. 2151.011(21).

**{¶32}** "Temporary custody" means "legal custody of a child who is removed from the child's home, which custody may be terminated at any time at the discretion of the court or, if the legal custody is granted in an agreement for temporary custody, by the person who executed the agreement." R.C. 2151.011(55).

**{¶33}** Though temporary custody is, by definition, a form of legal custody, a crucial difference between the two "is that 'legal custody' contemplates a more permanent custodial status for the children vis-à-vis the custodian." *In re Congrove*, 4th Dist. Ross No. 99 CA 2498, 2000 Ohio App. LEXIS 1585, *9, fn.4.

**{¶34}** Here, the original entry states, in relevant part:

**{¶35}** "The Magistrate finds that parties agree that this change of custody is in the best interest of the child; that it is for the convenience of the parties; and that it is subject to the ongoing jurisdiction of the court. No finding is made regarding the suitability of the parents."

**{¶36}** The Twelfth District was faced with a similar situation in *In re B.S.*, *supra*. There, after citing *Congrove*, *supra*, the court reviewed a similar entry and found: "[N]otwithstanding the use of the term 'legal custody,' the entry did not contemplate a long-lasting custodial status for B.C. vis-à-vis [the Guardian] Grandmother. Rather, the entry is akin to a grant of 'temporary custody' to the [Guardian] Grandmother." *In re B.S.* at ¶30. Looking at the agreement between the parties, the Twelfth District noted that the grandmother was aware that the mother may petition the court for the return of custody of the child upon mother "substantially complet[ing] her case plan objectives and/or comply[ing] with her community control sanctions[.]" *Id.* at ¶41. However, in the

meantime, the minor child would continue to live with and be cared for by the grandmother.

{¶37} In this case, a review of the entry and the transcript clarifies that the trial court did not contemplate a long-lasting custodial arrangement. The trial court continually noted during the hearing that if Mother requested the child back, then the court would "immediately return legal custody to her." Indeed, as the natural mother, appellee has a fundamental right to the custody and care of her child.

{¶38} Notwithstanding this fundamental right, it must be acknowledged that a parent can contract away custody rights of his or her minor child and, accordingly, may be considered to have forfeited his or her right to custody of such child. *Masitto v. Masitto*, 22 Ohio St.3d 63, 65 (1986). "[W]hether or not a parent relinquishes rights to custody is a question of fact which, once determined, will be upheld on appeal if there is some reliable, credible evidence to support the finding." *Id*. at 66. Here, the trial court *made no determination that mother relinquished her rights* and, in fact, held the very opposite: that Mother retained her right to have sole custody returned to her. As noted above, the trial court previously established the scope of the custody, making it clear that the arrangement was "purely for the convenience of the parties" and that Aunt did not "take on" any of Mother's parental rights.

{¶39} There is little question that the trial court is in the best position to exercise discretion in custody matters such as the one before us. Significant time has passed since the trial court's determination; accordingly, this court must defer to the discretion of the trial court and affirm the judgment.

{¶40} Aunt's assignment of error is without merit.

{¶41} The judgment of the Portage County Court of Common Pleas, Juvenile Division, is hereby affirmed.

THOMAS R. WRIGHT, J., concurs,

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

_____

COLLEEN MARY O'TOOLE, J., dissents with a Dissenting Opinion.

{¶42} I respectfully dissent.

{¶43} The majority contends that the trial court did not err by adopting the magistrate's decision and ordering that Aunt return custody of the minor child to Mother. For the following reasons, I disagree.

{¶44} Regarding jurisdiction, this court has held that "[t]he jurisdiction of a juvenile court does not attach until proper notice of the proceedings has been provided to the parties." *In re A.L.W.*, 11th Dist. Portage Nos. 2011-P-0050, 2011-P-0051, and 2011-P-0052, 2012-Ohio-1458, ¶29, citing *In re Cowling*, 72 Ohio App.3d 499, 502 (9th Dist.1991). Various rules and statutes govern the service of process for juvenile proceedings. *See* Juv.R. 16(A); Civ.R. 4; R.C. 2151.29.

{¶45} Regarding our standard of review, the Ohio Supreme Court has held that a trial court has broad discretion in determining custody matters. *Reynolds v. Goll*, 75 Ohio St.3d 121, 124 (1996). Consequently, we can only sustain a challenge to a trial court's custody decision upon a finding that the trial court abused its discretion. *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997). The term "abuse of discretion" is one of art,

9

"connoting judgment exercised by a court, which does not comport with reason or the record." *State v. Underwood*, 11th Dist. Lake No. 2008-L-113, 2009-Ohio-2089, ¶30, citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

**{¶46}** With regard to due process of service and an incorrect application of a statute, "purely legal issues are reviewed de novo by this court." *Grein v. Grein*, 11th Dist. Lake No. 2009-L-145, 2010-Ohio-2681, ¶23, citing *Cleveland Elec. Illum. Co. v. Pub. Util. Comm.*, 76 Ohio St.3d 521, 523 (1996).

**{¶47}** The Fourteenth Amendment to the United States Constitution provides that state governments may not "deprive any person of life, liberty, or property, without due process of law." Section 16, Article I of the Ohio Constitution guarantees "due course of law," which is virtually the same as the "due process" clause of the Fourteenth Amendment. *See In re Hua*, 62 Ohio St.2d 227, 230 (1980).

**{¶48}** "Procedural due process requires that the government provide constitutionally adequate procedures before depriving individuals of a protected liberty interest." *In re T.J.*, 10th Dist. Franklin Nos. 10AP-201 and 10AP-202, 2010-Ohio-4191, ¶10, citing *Cleveland Bd. of Edn. v. Loudermill*, 470 U.S. 532, 541 (1985). The right to procedural due process, at a minimum, requires notice and the opportunity to be heard. *See State v. Mateo*, 57 Ohio St.3d 50, 52 (1991), citing *State v. Luff*, 117 Ohio St. 102, paragraph four of the syllabus.

**{¶49}** "'Substantive due process, [although an] ephemeral concept, protects specific fundamental rights of individual freedom and liberty from deprivation at the hands of arbitrary and capricious government action. The fundamental rights protected by substantive due process arise from the Constitution itself and have been defined as

10

those rights which are "implicit in the concept of ordered liberty." (* * *) While this is admittedly a somewhat vague definition, it is generally held that an interest in liberty or property must be impaired before the protections of substantive due process become available.'" *State v. Small*, 162 Ohio App.3d 375, 2005-Ohio-3813, ¶11 (10th Dist.), quoting *Gutzwiller v. Fenik*, 860 F.2d. 1317, 1328 (6th Cir.1989).

**{¶50}** "[T]he overriding principle in custody cases between a parent and nonparent is that natural parents have a fundamental liberty interest in the care, custody, and management of their children. *Santosky v. Kramer* (1982), 455 U.S. 745, 753 * * *; *In re Murray* (1990), 52 Ohio St.3d 155, 157 * * *. This interest is protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution and by Section 16, Article I of the Ohio Constitution; *Santosky*, *supra*; *In re Shaeffer Children* (1993), 85 Ohio App.3d 683, 689-690 * * *." *Hockstok v. Hockstok*, 98 Ohio St.3d 238, 2002-Ohio-7208, ¶16. (Parallel citations omitted.)

**{¶51}** All parties, including nonparents who have been awarded custody, are entitled to a hearing on the issue of unsuitability. *Id.* at 246-247. In addition, "[d]ue process * * * requires that a party be given notice of a motion for modification of custody. 4 Child Custody & Visitation Law and Practice (1991), 25-36." *May v. May*, 9th Dist. Medina No. 2016, 1992 Ohio App. LEXIS 54, *8 (Jan. 2, 1992).

**{¶52}** In *In re Perales*, 52 Ohio St.2d 89, 98 (1977) the Supreme Court of Ohio held that "parents may be denied custody only if a preponderance of the evidence indicates abandonment, contractual relinquishment of custody, total inability to provide care or support, or that the parent is otherwise unsuitable -- that is, that an award of custody would be detrimental to the child." "Thus, a finding of parental unsuitability has

11

been recognized by [the Supreme Court of Ohio] as a necessary first step in child custody proceedings between a natural parent and nonparent." *Hockstok, supra,* at ¶18.

{¶53} However, "once custody has been awarded to a nonparent, the court will not apply the *Perales* unfitness standard to a later request for custody modification. Instead, custody modification in that situation is determined under the R.C. 3109.04 change in circumstances/best-interest standard." *Purvis v. Hazelbaker*, 181 Ohio App.3d 167, 2009-Ohio-765, ¶10 (4th Dist.), citing *Hockstok, supra*, at ¶21. Therefore, the party seeking to modify a previous custody award made to a non-parent must show a change in circumstances/best interest even if the non-custodial party is a parent and the custodial party is a nonparent. *Id. See also Penna v. Rowe*, 11th Dist. Portage No. 2012-P-0026, 2012-Ohio-5442, ¶19-20.

{¶54} Thus, custody modification in this case is determined under R.C. 3109.04(E)(1)(a), which provides in part:

{¶55} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child."

{¶56} The Supreme Court of Ohio, in reviewing R.C. 3109.04(E)(1)(a), determined that it is designed to provide stability in the life of a child and is intended to spare children from a constant "'"tug of war."'" *In re James*, 113 Ohio St.3d 420, 2007-

Ohio-2335, ¶15, quoting *Davis, supra*, at 418. Although the United States and Ohio Constitutions afford parents a fundamental right to custody of their children, R.C. 3109.04(E)(1)(a) does not violate those rights either on its face or as applied to this case. *See James* at ¶17.

{¶57} In this case, Mother contractually relinquished legal custody of her child in the original judgment. The court's original instructions in 2006 to Uncle and Aunt were erroneous in many respects, including an improper summary and application of the law, which was not challenged on appeal. The court's dicta cannot change its obligations under the Ohio Revised Code. Children are not chattel or possessions to be passed back and forth, and are persons under the law. *See Martin v. Martin*, 11th Dist. Geauga No. 91-G-1636, 1991 Ohio App. LEXIS 5944, *6 (Dec. 13, 1991). This entitles the parties to a myriad of constitutional and statutory protections, including a meaningful voice in the proceeding.

{¶58} All the parties, including children, are afforded a right to be heard and to meaningfully participate. Once the court has entered an order granting or modifying custody, there must be an evidentiary proceeding to determine a change in circumstances and a best interest analysis. This guarantees that all parties including the children's wishes through counsel or a guardian ad litem also be considered. *See In re Paris*, 11th Dist. Ashtabula Nos. 2003-A-0133 and 2003-A-0134, 2004-Ohio-1962, ¶26.

{¶59} For almost six years, Aunt has raised the minor child in a stable home environment. The record before us does not establish a change in the minor child's circumstances. The trial court was required to (but failed to) follow the mandate of R.C.

13

3109.04(E)(1)(a), which promotes stability in the development of children and is not unconstitutional as applied when a noncustodial parent has not evidenced that a change of circumstances has occurred.

{¶60} Aunt was denied her chance to present evidence as to Mother's unsuitability. Aunt had a right to notice and an opportunity to be heard on that issue. As a party to the proceeding, due process requires that she be permitted to present evidence on whether Mother is unsuitable. However, the trial court erroneously relied on its 2006 instructions instead.

{¶61} Without following the procedures of R.C. 3109.04(E)(1)(a), the trial court ordered, without a hearing, that Aunt return custody of the minor child to Mother. Such order was clearly error. The court proceeded without jurisdiction and service of process in violation of the parties' rights under the Fourteenth Amendment to the United States Constitution and Section 16, Article I of the Ohio Constitution.

{¶62} Thus, based on the facts presented, I believe the trial court erred by adopting the magistrate's decision and ordering that Aunt return custody of the minor child to Mother.

{¶63} For the foregoing reasons, I dissent.