[Cite as *Angelo v. Angelo*, 2024-Ohio-5163.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## PORTAGE COUNTY

| | |
|---|---|
| JACQUELINE L. ANGELO, | CASE NO. 2024-P-0013 |
| Plaintiff-Appellee, | |
| - vs - | Civil Appeal from the Court of Common Pleas, Domestic Relations Division |
| SCOTT M. ANGELO, et al., | |
| Defendant-Appellant. | Trial Court No. 2017 DR 00150 |

# O P I N I O N

Decided: October 28, 2024
Judgment: Affirmed

*Amanda J. Lewis*, Paoloni & Lewis, 250 South Water Street, P.O. Box 762, Kent, OH 44240 (For Plaintiff-Appellee).

*Corrine Hoover Six*, Hoover Kacyon, LLC, 527 Portage Trail, Cuyahoga Falls, OH 44221 (For Defendant-Appellant).

EUGENE A. LUCCI, P.J.

{¶1}   Appellant, Scott M. Angelo ("Husband"), appeals the judgment modifying his spousal support obligation to appellee, Jacqueline L. Angelo ("Wife"). We affirm.

{¶2}   The parties married in 1992, and three children were born as issue of the marriage. Prior to marriage, Wife had acquired her master's degree in education. She was working as a schoolteacher when the parties married. In 1995, Wife stopped teaching when the parties' first child was born. Wife did not work again during the marriage until 2011, when Wife began teaching yoga part time. During the parties' marriage, Husband earned a master's degree in business administration. In or about 2016, Husband obtained a position as a Chief Information Officer ("CIO") at an immigration law firm, which involved

extensive travel. Husband's employment contract provided for a base salary of $800,000 per year, a signing bonus of $25,000, and annual bonuses of at least $200,000 per year. During their marriage, the parties enjoyed a comfortable lifestyle.

{¶3} In 2017, after approximately 25 years of marriage, the parties divorced through a decree that incorporated a separation agreement and shared parenting plan relative to their youngest child, born in 2000, who has since emancipated. At the time of their divorce, the parties were both 53 years old. Wife was in good health. Husband had been diagnosed with diabetes, heart disease, and high blood pressure.

{¶4} In the separation agreement, the parties agreed to divide the real property as follows: Wife received the parties' primary residence in Aurora, Ohio (the "Nautilus Trail" property), and Husband received the parties' second home in Pittsburgh, Pennsylvania (the "Resaca Place" property). The separation agreement provided that each party would be liable for the mortgage loans associated with the real property they received. The separation agreement further provided that Husband would be responsible for the home equity line of credit relative to the Nautilus Trail property in the amount of $89,222, a debt owing to Pentagon Federal Credit Union in the amount of $32,000, a debt owing to Home Depot in the amount of $83,233, student loans incurred for the benefit of the parties' adult sons in the amount of $80,000, and a loan from Husband's 401(k) in the amount of $28,255.

{¶5} The parties further agreed that, aside from a State Teachers Retirement System ("STRS") account worth $17,487, which was retained by Wife, the parties' retirement benefits would be equally divided, with each party receiving approximately $281,500. In addition, Husband retained possession of approximately $1,000 in stock.

2

Wife received bank accounts with a value of approximately $67,548, and Husband received bank accounts with a value of approximately $67,000.

{¶6} With respect to their motor vehicles, the parties each retained the use of, and liability for, their respective leased vehicles: a BMW 528 leased by Wife, and a 2017 Mercedes Benz GLA 250 leased by Husband. In addition, Husband was allocated the following titled vehicles/watercraft and the corresponding liabilities associated with each: a 2013 Mercedes E350, a 2009 Ford F-350, a 2013 Harley-Davidson Road Glide motorcycle, a 2013 Polaris Razor, a 2006 Honda jet-ski and dock, and a 2015 Mastercraft Prostar Boat and lift.

{¶7} Moreover, the parties agreed that Husband would pay Wife spousal support pursuant to the following provision:

> Husband shall pay to Wife, as spousal support (alimony), the sum of Fourteen Thousand Five Hundred Eighty-three and 33/100 Dollars ($14,583.33) per month, commencing upon January 1, 2018 for a term of not more than one hundred eight (108) months. The payments required by this Section shall be included in Wife's gross income and deducted by Husband for income tax purposes. Husband shall also continue to pay Wife's cell phone bill for a period of twenty four months starting December 1, 2017. The parties further agree that the Court shall retain jurisdiction to modify spousal support.
>
> In the event of the death of either party, spousal support shall terminate. In the event Wife remarries or cohabits, the amount of spousal support shall be reduced to Two Thousand Eighty-three and 33/100 Dollars ($2,083.33) per month until the mortgage securing the loan on the parties' Nautilus Trail property is paid in full, not to exceed the original term.
>
> In the event Husband pays the Nautilus Trail mortgage in full prior to the expiration of the term of spousal support, Husband's spousal support obligation shall be reduced by Two Thousand Eighty-three and 33/100 Dollars ($2,083.33) per month from the current monthly amount due at the time the mortgage is paid in full.

3

Case No. 2024-P-0013

The Court shall retain jurisdiction over this provision.

{¶8} Although the parties did not reference their respective incomes with respect to spousal support specifically in the separation agreement, for purposes of the statutory child support calculation, the parties agreed to impute income to Wife in the amount of $16,952 per year and agreed that Husband earned $800,000 per year.

{¶9} Further, within the separation agreement, Wife waived any claim to Husband's bonus for 2017 and subsequent years, but the parties agreed that the court could consider the entirety of Husband's gross income for purposes of modification proceedings.

{¶10} In 2022, Husband's employer eliminated the CIO position. As a result, Husband sought and obtained employment at a different entity. In January 2023, Husband filed a motion to modify the spousal support obligation due to a significant decrease in his annual income.

{¶11} Following a hearing on Husband's motion, the trial court issued an order on January 31, 2024, decreasing Husband's spousal support obligation to $13,000 per month commencing January 1, 2024, for the remainder of the original term of spousal support. We address the findings and additional provisions contained in the January 31, 2024 judgment in our discussion of Husband's assigned errors.

{¶12} To facilitate our discussion, we first address Husband's fourth assigned error, in which he argues:

{¶13} "The trial court erred in its decision modifying spousal support without considering the relative incomes of the parties at the time of the post decree litigation in comparison to at the time of the original award of support."

4

{¶14} "A trial court's decision on a motion to modify spousal support is reviewed for an abuse of discretion and its judgment cannot be disturbed on appeal absent a showing that the trial court abused its discretion." *Mencini v. Mencini*, 2010-Ohio-2409, ¶ 10 (11th Dist.), citing *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 218 (1983). "'The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record."'" *Willoughby v. Willoughby*, 2014-Ohio-743, ¶ 24 (11th Dist.), quoting *In re V.M.B.*, 2013-Ohio-4298, ¶ 26, quoting *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.), citing *State v. Ferranto*, 112 Ohio St. 667, 676-678 (1925).

{¶15} Pursuant to R.C. 3105.18(E)(1):

> [T]he court that enters the decree of divorce . . . does not have jurisdiction to modify the amount or terms of . . . spousal support unless the court determines that the circumstances of either party have changed and unless . . . the decree or a separation agreement of the parties to the divorce that is incorporated into the decree contains a provision specifically authorizing the court to modify the amount or terms of alimony or spousal support.

{¶16} Where a decree retains jurisdiction of the trial court to modify spousal support and a change in circumstances has occurred, the trial court "then must analyze 'whether the existing spousal support order *should* be modified.'" (Emphasis in original.) *Anspach v. Anspach*, 2007-Ohio-5207, ¶ 14 (11th Dist.), quoting *Leighner v. Leighner*, 33 Ohio App.3d 214, 215 (10th Dist. 1986). "'In other words, the court reexamines the existing award to determine if it is still appropriate and reasonable.'" *Anspach* at ¶ 14, quoting *Barrows v. Barrows*, 2004-Ohio-4878, ¶ 7 (9th Dist.). "The burden of showing that a reduction in spousal support is warranted is on the party seeking the reduction." *Anspach* at ¶ 14, citing *Reveal v. Reveal*, 2003-Ohio-5335, ¶ 14 (2d Dist.).

5

Case No. 2024-P-0013

**{¶17}** "In determining whether or not the existing award remains 'appropriate and reasonable under the circumstances,' the court's discretion is not unlimited, but is to be guided by its consideration of the factors set forth in R.C. 3105.18(C)." *Anspach* at ¶ 16, quoting *DeChristefero v. DeChristefero*, 2003-Ohio-2234, ¶ 15 (11th Dist.). R.C. 3105.18(C) provides:

> (1) In determining whether spousal support is appropriate and reasonable, and in determining the nature, amount, and terms of payment, and duration of spousal support, which is payable either in gross or in installments, the court shall consider all of the following factors:
>
> (a) The income of the parties, from all sources, including, but not limited to, income derived from property divided, disbursed, or distributed under section 3105.171 of the Revised Code;
>
> (b) The relative earning abilities of the parties;
>
> (c) The ages and the physical, mental, and emotional conditions of the parties;
>
> (d) The retirement benefits of the parties;
>
> (e) The duration of the marriage;
>
> (f) The extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home;
>
> (g) The standard of living of the parties established during the marriage;
>
> (h) The relative extent of education of the parties;
>
> (i) The relative assets and liabilities of the parties, including but not limited to any court-ordered payments by the parties;
>
> (j) The contribution of each party to the education, training, or earning ability of the other party, including, but not limited to, any party's contribution to the acquisition of a professional degree of the other party;

6

(k) The time and expense necessary for the spouse who is seeking spousal support to acquire education, training, or job experience so that the spouse will be qualified to obtain appropriate employment, provided the education, training, or job experience, and employment is, in fact, sought;

(l) The tax consequences, for each party, of an award of spousal support;

(m) The lost income production capacity of either party that resulted from that party's marital responsibilities;

(n) Any other factor that the court expressly finds to be relevant and equitable.

(2) In determining whether spousal support is reasonable and in determining the amount and terms of payment of spousal support, each party shall be considered to have contributed equally to the production of marital income.

{¶18} Further, pursuant to R.C. 3105.18(F)(2), "In determining whether to modify an existing order for spousal support, the court shall consider any purpose expressed in the initial order or award and enforce any voluntary agreement of the parties."

{¶19} Here, there is no dispute that the separation agreement retained jurisdiction to modify spousal support or that there existed a change in the circumstances of the parties warranting modification. Instead, Husband argues that the trial court failed "to address the 40% narrowing of the gap in incomes between the parties from the original divorce to the current income of the parties" when it reduced Husband's spousal support obligation by only 11 percent.

{¶20} However, in its January 31, 2024 judgment, the trial court considered each relevant spousal support factor and noted the circumstances that had changed since the time of the divorce.

7

Case No. 2024-P-0013

**{¶21}** With respect to Husband's income and relative earning ability (R.C. 3105.18(C)(1)(a) and (C)(1)(b)), the court found that, following the divorce, Husband earned $1,250,000 in 2019 and $1,216,269 in 2020 at the firm where he was employed at the time of the parties' divorce in 2017. In July 2022, Husband's employer notified him that the CIO position at the firm was to be terminated. Husband's last day at the firm was October 28, 2022. Husband received a severance package from the firm for nine months of employment, totaling $675,000, which was contingent upon Husband executing a two-year non-compete agreement.[1]

**{¶22}** After receiving notification that the CIO position at the firm was to be terminated, Husband sought employment based in Pennsylvania that required less travel. He obtained such employment commencing November 1, 2022, as a CIO, presumably at an entity that did not practice immigration law pursuant to the terms of his non-compete agreement. Husband's contract at the new entity set his salary at $475,000 per year plus a maximum bonus of $25,000 per year and provided him eligibility for a salary review in January 2024.

**{¶23}** In addition, Husband received the Resaca Place property as part of the property division in the divorce decree. Although Husband had previously rented out the property, he testified at the hearing on his motion to modify that he had not placed the property for rent in the last two years. He did not provide any basis for foregoing rental income.

---

1. The trial court's judgment noted that Husband's severance package required that he execute a non-compete agreement to refrain from working in immigration-related services for one year. However, the testimony and exhibit admitted at hearing indicate that the non-compete agreement was for a term of two years, with approximately one year remaining on the agreement as of the time of hearing.

{¶24} With respect to Wife's income and relative earning ability (R.C. 3105.18(C)(1)(a) and (C)(1)(b)), following the parties' divorce, Wife attempted to find full-time teaching positions, but, because teaching philosophies had changed significantly during the 22 years that Wife was out of the teaching field, she was unable to secure an interview for the full-time positions for which she applied. Wife obtained work as an on-call substitute teacher until the outbreak of COVID-19. When substitute teaching was no longer feasible due to the pandemic, Wife obtained a position in the front office of a podiatrist's practice, where she continued to work, earning approximately $30,784 per year. In addition, Wife continued to teach yoga on a part-time basis, earning between $3,000 to $5,000 per year. Accordingly, the spousal support received from Husband constituted Wife's primary source of income.

{¶25} Concerning the ages and the physical, mental, and emotional conditions of the parties (R.C. 3105.18(C)(1)(c)), the court found that Husband was 59 years old and continued to suffer from diabetes, heart disease, and high blood pressure, but there was no evidence admitted indicating that these conditions had worsened following the divorce. However, subsequent to the divorce, Husband suffered a mini-stroke, from which he had no lasting effects. Wife was nearly 59 years old and remained in good health.

{¶26} In regard to the retirement benefits of Husband (R.C. 3105.18(C)(1)(d)), the court noted that no evidence was presented as to the amount of benefits Husband could receive from social security. Further, although Husband had been a member of the military reserves for over ten years, he testified that he was not entitled to any retirement benefits as a result of his service. The court found that three of Husband's retirement accounts had a total value of $683,702 as of the time of hearing. However, although

9

Husband acknowledged he has retirement benefits as a result of his new employment, he did not disclose this account on his financial disclosure affidavit. Husband's paystubs reflected twice monthly contributions of $1,250 to his current 401(k). Although Husband's contract with his new employer provided that he was entitled to pension and profit sharing, no evidence was presented at the hearing as to the accumulated value of these benefits.

{¶27} In regard to the retirement benefits of Wife (R.C. 3105.18(C)(1)(d)), Wife utilized the $281,500 she received as her share of the retirement accounts from the divorce to open accounts with Ameriprise. She then regularly contributed $6,000 per month into the Ameriprise accounts following the divorce, resulting in the accounts' valuing $719,878 at the time of the modification hearing. The court found that Wife would be eligible for social security benefits and a small STRS benefit of less than $5,000 per year. Wife's employment did not provide her with retirement benefits.

{¶28} With respect to the duration of marriage (R.C. 3105.18(C)(1)(e)), the court noted that the parties were married for approximately twenty-five years.

{¶29} Concerning the extent to which it would be inappropriate for a party, because that party will be custodian of a minor child of the marriage, to seek employment outside the home (R.C. 3105.18(C)(1)(f)), the parties' children were emancipated at the time of the hearing, and, thus, the court found this factor inapplicable.

{¶30} In regard to the standard of living of the parties established during the marriage (R.C. 3105.18 (C)(1)(g)), the court found that the parties enjoyed "a very nice" standard of living during the marriage. They owned a nice home with a pool and a vacation property. They drove luxury vehicles and owned recreational vehicles and watercraft. Although Wife continued to reside in the marital residence following the divorce, she did

10

not own vacation homes, had "downgraded the prestige of her motor vehicle," and did not own any other titled vehicles or watercraft. However, since the divorce, Husband remarried and purchased a new primary residence in Sewickley, Pennsylvania, with his new spouse, that is worth approximately twice that of the marital residence at the time of the divorce. Husband and his new spouse purchased an additional vacation home in Sandusky, Ohio. The court further found that Husband maintained the "prestige" of the motor vehicles he owned and upgraded to newer models. The court determined that, although Wife "opted to live conservatively and invest a portion of her spousal support to protect her future," Husband "opted to improve his standard of living and lifestyle. . . ."

{¶31} With respect to the education of the parties and the contribution of each party to the education, training, or earning ability of the other party (R.C. 3105.18 (C)(1)(h) and (C)(1)(j)), Wife obtained her master's degree in education prior to the marriage; although due to the significant amount of time that she was absent from the teaching field, her advanced degree had not provided her with any increased earning ability. Husband obtained his master's degree in business administration during the marriage. No testimony was provided as to the marital contributions to Husband's advanced degree.

{¶32} With respect to the relative assets and liabilities of Husband (R.C. 3105.18 (C)(1)(i)), the court found that the balance in Husband's bank accounts as of the time of the hearing totaled approximately $855,729 (which included approximately $414,383 from Husband's severance pay). Although both the Sewickley residence and Sandusky home were jointly titled to both he and his new spouse, Husband paid the entirety of the mortgages, property taxes, and insurance for each property, totaling $5,453.36 per month for the Sewickley property and $2,000 per month for the Sandusky property. Husband

paid $1,217.71 per month on the mortgage loans encumbering the Resaca Place property. The court found that Husband owned a 2020 GMC Sierra, the loan for which he fully paid following the divorce; a 2020 BMW, which had an outstanding auto loan of $39,333.92, for which Husband made monthly payments of $625; a 2020 Honda, the loan for which Husband fully paid following the divorce; a 2021 Harley-Davidson motorcycle, for which there was no evidence as to an associated loan; and a 2021 Ranger boat, which had an outstanding loan balance of $100,185.85, for which Husband made monthly payments of $716.45. In addition, Husband indicated that his wife is the owner of a Chris-Craft boat, but he pays the monthly expenses associated with the boat in the amount of $1,108 per month. The court found that Husband had paid off the entirety of the unsecured debts due to Pentagon and Home Depot allocated to him in the divorce. He had also reduced the student loan balance for his sons to $16,000.

{¶33} As to the assets and liabilities of Wife (R.C. 3105.18(C)(1)(i)), the court found that, as of the time of hearing on Husband's motion, the balance in Wife's savings accounts totaled approximately $113,164. Wife retained the Nautilus Trail property and paid $2,205 per month for the mortgage (which she had refinanced into her sole name), taxes, insurance, and homeowners' association fees pertaining to the property. Wife had acquired no other real property since the divorce. Wife leased a Toyota Camry, and owned no titled vehicles, recreational vehicles, or watercraft.

{¶34} Concerning the time and expense necessary for Wife to acquire education, training, or job experience so that she would be qualified to obtain appropriate employment (R.C. 3105.18(C)(1)(k)), the court found that Wife had already attempted to re-enter the teaching field following the divorce, and no evidence as to the time or

12

expense of her efforts was introduced. Nor was any evidence introduced as to the potential cost of any further training or education.

{¶35} Relative to the tax consequences of spousal support (R.C. 3105.18(C)(1)(l)), the parties specifically agreed to retain the tax allocation set forth in the separation agreement; namely, spousal support would be tax deductible for Husband and taxable income for Wife.

{¶36} In regard to the lost income production capacity of either party that resulted from that party's marital responsibilities (R.C. 3105.18(C)(1)(m)), the court found it clear that Wife lost income production capacity due to her staying at home to raise the parties' children. Despite her master's degree in teaching, she did not utilize her teaching skills from 1995 to 2017, approximately 22 years, while she was a stay-at-home parent.

{¶37} Concerning any other relevant factors (R.C. 3105.18(C)(1)(n)), the court noted that Husband's new spouse earns in excess of $355,000 per year, but the new spouse pays only the utilities associated with the Sewickley property. The court further noted that two of the parties' adult children reside with Wife at the Nautilus Trail property, but they do not contribute to the household expenses.

{¶38} In addition, Husband pays for insurance for himself and his new spouse at an annual cost of $16,686.24, and he deposits $7,000 per year into a health savings account. Moreover, Husband pays some of his mother's living expenses.

{¶39} Following its review of the statutory factors, the trial court reduced Husband's spousal support obligation by $1,583.33 per month, concluding that the monthly amount of support of $13,000 was reasonable and appropriate under the circumstances. Although Husband advocates for a larger decrease based upon the

13

narrowing gap between the parties' incomes, nothing in the parties' separation agreement or the statutory factors provides for a modification in strict proportionality with the lessened difference in the parties' income. Accordingly, Husband's fourth assigned error lacks merit.

{¶40} In his first and second assigned errors, Husband argues:

> [1.] The trial court erred in making the amount of spousal support, set forth in the parties' Separation Agreement as modifiable, nonmodifiable in amount in its post decree judgment entry.

> [2.] The trial court erred in making spousal support only modifiable in the future in an increased amount without also allowing for downward modifications.

{¶41} In his first two assigned errors, Husband maintains that the trial court erred as a matter of law in altering the continuing jurisdiction of the court to modify spousal support.[2] We review errors of law de novo without deference to the trial court's legal conclusions. *Szokan v. Stevens*, 2020-Ohio-7001, ¶ 35 (11th Dist.); *State ex rel. Ames v. Portage Cty. Bd. of Commrs.*, 2022-Ohio-105, ¶ 6 (11th Dist.).

{¶42} Pursuant to R.C. 3105.18(F)(2), "Absent an agreement of the parties, the court shall not modify the continuing jurisdiction of the court as contained in the original decree."

{¶43} Here, Husband maintains that the trial court's January 31, 2024 judgment removed "the parties agreed upon reservation of jurisdiction," and Husband reads the trial court's judgment as "further ordering that the amount of [Husband's] spousal support

2. In his first assigned error, Husband references the standard of review applicable to "a trial court's action with respect to a magistrate's decision . . . ." However, Husband's motion was heard by a judge, not a magistrate, and thus no magistrate's decision was issued with respect to Husband's motion.

14

Case No. 2024-P-0013

could not be decreased for the remainder of the original term but could be increased in the event that Husband resumed making $800,000."

{¶44} However, for the reasons that follow, we disagree with Husband's reading of the January 31, 2024 judgment. The judgment specifically states as follows:

> The Court finds that it is reasonable and appropriate to modify [Husband]'s spousal support award to Thirteen Thousand Dollars ($13,000.00) per month, at this time. IT IS HEREBY ORDERED, ADJUDGED AND DECREED that [Husband]'s spousal support obligation is modified to Thirteen Thousand Dollars ($13,000.00) per month, plus processing fee. Spousal support shall be included in gross income and taxable to [Wife] and deducted by [Husband] for income tax purposes.
>
> IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the Court retains jurisdiction to modify spousal support as originally reserved in the Judgment Entry – Decree of Divorce.

{¶45} Although Husband recognizes that the above provision retains the original reservation of jurisdiction, he maintains that the following provisions contained in the judgment effectively limit the application in the manner advanced in his brief:

> [1.] IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Husband] shall pay [Wife] spousal support as ordered herein for the remainder of the original term of 108 months as prescribed in the Judgment Entry – Decree of Divorce. . . .
>
> [2.] IT IS FURTHER ORDERED, ADJUDGED AND DECREED that [Husband] shall provide [Wife] with a copy of his federal income tax return, along with all associated schedules and W-2, no later than February 15th of each calendar year. Just cause should be evidenced why [Husband]'s spousal support obligation to [Wife] should not be restored to its original award in the event he earns annual gross income of Eight Hundred Thousand Dollars ($800,000.00).

{¶46} We read nothing in these provisions that limits the trial court's reservation of jurisdiction to modify spousal support. The first provision decreases the amount of the

15

monthly spousal support obligation without modification of the original term. The second provision recognizes that, given the parties' initial agreement, wherein the parties agreed that Husband earned $800,000 per year, restoration of the original agreed amount may likely be appropriate if he were to again earn such an amount. However, it does not limit future modification to this situation. Accordingly, these provisions neither explicitly nor implicitly prevent either party from seeking an upward or downward modification of spousal support. Thus, we disagree with the premise on which Husband's first and second assigned errors are based.

{¶47} Accordingly, Husband's first and second assigned errors lack merit.

{¶48} In his third assigned error, Husband maintains:

> The trial court erred in requiring the spousal support obligor to provide his yearly income tax returns to the spousal support obligee for the purposes of increasing the spousal support amount should be (sic.) earn more money, without also requiring the spousal support obligee to provide her income tax returns for the purposes of any downward adjustment pursuant to the factors set forth in O.R.C. §3105.18(C)(1).

{¶49} As set forth in our discussion of Husband's first and second assigned errors, in the January 31, 2024 judgment, the trial court required Husband to provide Wife with a copy of his federal income tax return, including all schedules and his W-2, prior to February 15 each year. The court ordered no similar requirement of Wife.

{¶50} Generally, appellate courts review a trial court's judgment in a domestic relations case for an abuse of discretion. *Willoughby*, 2014-Ohio-743, at ¶ 24 (11th Dist.), citing *Booth v. Booth*, 44 Ohio St.3d 142, 144 (1989). "As a court of equity, a trial court 'must have discretion to do what is equitable upon the facts and circumstances of each case[.]'" *Willoughby* at ¶ 24, quoting *Booth* at 144, citing *Cherry v. Cherry*, 66 Ohio St.2d

16

348, 355 (1981). As set forth in our discussion of Husband's fourth assigned error, "'[t]he term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record."'" *Willoughby* at ¶ 24, quoting *In re V.M.B.*, 2013-Ohio-4298, at ¶ 26, quoting *Underwood*, 2009-Ohio-2089, at ¶ 30, citing *Ferranto*, 112 Ohio St. at 676-678.

{¶51} In support of his third assigned error, Husband argues that "taking away the modification clause in the original agreement, only allowing for a future increase in the spousal support amount, coupled with only one party ordered to produce their tax returns is 'arbitrary, unreasonable, or unconscionable' by the court and, as such constitutes an abuse of discretion." However, as set forth in our discussion of Husband's first and second assignments of error, the trial court specifically retained the original modification provision and did not limit future modifications to only increases in the spousal support obligation.

{¶52} With respect to the requirement that Husband provide a copy of his tax return to Wife each year, Husband does not argue that the trial court lacked authority to require the parties to exchange federal tax returns. *See Ossai-Charles v. Charles*, 2011-Ohio-3766, ¶ 42 (12th Dist.) (trial court order requiring the parties exchange tax returns during a term of spousal support was not an abuse of discretion). Instead, Husband maintains that the requirement that *only he* provide a copy of his tax return each year was unreasonable, arbitrary, or unconscionable.

{¶53} However, as discussed above, the evidence at the hearing established Husband's income was significantly higher than $800,000 in the years following the divorce. Wife testified that she was unaware of Husband's increased income during this period, and she requested that the court require Husband to thereafter provide her with

17

copies of his tax returns. Husband made no similar request for such a requirement to be made of Wife, despite her approximate $15,000 annual increase in income from that which was imputed to her at the time of the divorce.

{¶54} Further, it was contemplated that Husband could potentially earn greater amounts, as he was bound to a two-year non-compete agreement at the time he began his new employment, and he was eligible for a salary review in January 2024. There was no indication that Wife would earn substantially more during the remainder of the support term. To the contrary, the trial court found that there was little likelihood that Wife's advanced degree in education which was acquired prior to the marriage would be of any significant benefit in improving her earnings ability. The court determined that Wife's "anticipated earning ability between yoga instruction and W-2 wages" to be between $35,000 and $37,000.

{¶55} We cannot say that the trial court's order for only Husband to produce his tax returns was an abuse of discretion.

{¶56} Accordingly, Husband's third assigned error lacks merit.

{¶57} The judgment is affirmed.


MATT LYNCH, J.,

ROBERT J. PATTON, J.,

concur.