[Cite as *In re O.P.*, 2025-Ohio-3030.]

# IN THE COURT OF APPEALS OF OHIO
## ELEVENTH APPELLATE DISTRICT
## ASHTABULA COUNTY

IN THE MATTER OF:

O.P., DEPENDENT CHILD

CASE NO. 2025-A-0008

Civil Appeal from the
Court of Common Pleas,
Juvenile Division

Trial Court No. 2024 JC 00068

## OPINION AND JUDGMENT ENTRY

Decided: August 25, 2025
Judgment: Affirmed

*Margaret Brunarski*, Ashtabula County Public Defender, and *Phillip L. Heasley*, Assistant Public Defender, 22 East Jefferson Street, Jefferson, OH 44047 (For Appellant Jennifer P.).

*April R. Grabman*, Ashtabula County Prosecutor, and *Mary M. Stanford*, Assistant Prosecutor, 25 West Jefferson Street, Jefferson, OH 44047 (For Appellee Ashtabula County Children Services Board).

*Ariana E. Tarighati*, Law Offices of Ariana E. Tarighati, LPA, 34 South Chestnut Street, Suite 100, Jefferson, OH 44047 (Guardian ad Litem).

MATT LYNCH, J.

{¶1}   Appellant, Jennifer P. ("Mother"), appeals the decision of the Ashtabula County Court of Common Pleas, Juvenile Division, that overruled her motion for legal custody of her child, O.P. (d.o.b. 06/18/2017), and committed O.P. to the temporary custody of appellee, the Ashtabula County Children Services Board ("ACCSB"). Mother maintains that the juvenile court failed to consider the best interest factors in R.C. 3109.04 and her ability to provide for O.P.'s needs. Mother and Father are divorced, and Father is not a party to the appeal. We affirm the juvenile court's judgment.

{¶2} ACCSB dismissed a previous dependency case involving O.P. due to statutory time limitations. ACCSB immediately obtained emergency temporary custody of O.P., then six years old, and filed a new dependency complaint on October 24, 2024. As cause, the complaint cited O.P.'s various medical issues, which are mostly due to an unhealthy diet and excessive weight. ACCSB claimed that while in foster care, O.P.'s weight was managed and even improved but that O.P. regressed when she returned to Father's care. According to ACCSB, this prompted concern from O.P.'s medical providers, who contacted ACCSB to remove O.P. "for her own safety and avoid losing any more progress or gaining any more weight." The agency also alleged that O.P. has special needs that her parents fail to acknowledge or support, despite ACCSB's efforts to assist them. ACCSB claimed that the family was undergoing a forensic parenting evaluation to assess the parents' ability to care for O.P., and that ACCSB was awaiting the results of the evaluation to determine what is in O.P.'s best interest. The agency asserted that O.P. could not "return to the parents' care at this time due to the fact that they continue to struggle to meet her special needs and ensure that she is healthy."

{¶3} On December 13, 2024, following a hearing, the juvenile court adjudicated O.P. a dependent child. The juvenile court found O.P. was dependent as to Father under R.C. 2151.04(C) and dependent as to Mother under R.C. 2151.04(B) ("lacks adequate parental care by reason of the mental or physical condition of the child's parents") and 2151.04(C) ("condition or environment is such as to warrant the state, in the interests of the child, in assuming the child's guardianship").

{¶4} Both Mother and Father filed motions for legal custody of O.P., which the juvenile court considered at the dispositional hearing held January 8, 2025. On January

Case No. 2025-A-0008

31, 2025, the juvenile court issued an entry that denied both parents' motions for legal custody and granted temporary custody of O.P. to ACCSB.

{¶5} Mother asserts one assignment of error for our review:

{¶6} "The juvenile court erred in granting temporary custody of the subject child, O.P., to the Ashtabula County Children Services Board."

{¶7} When a child is adjudicated a dependent child, the court may make one of many dispositional orders listed in R.C. 2151.353(A). Mother's position on appeal is that the juvenile court should have awarded her legal custody of O.P. under R.C. 2151.353(A)(3), rather than committing O.P. to the temporary custody of ACCSB under R.C. 2151.353(A)(2)(a).

{¶8} At the outset, we note an order of temporary custody that emanates from an adjudication of dependency is a final order under R.C. 2505.02(B) and is appealable to the court of appeals under R.C. 2501.02(C). *See In re Nice*, 141 Ohio App.3d 445, 452 (7th Dist. 2001), citing *In re Murray*, 52 Ohio St.3d 155, 158 (1990); *accord In re N.C.*, 2022-Ohio-4569, ¶ 13 (11th Dist.).

{¶9} A juvenile court's temporary custody determination under R.C. 2151.353 will only be reversed on appeal when an abuse of discretion has been demonstrated. *In re D.C.R.*, 2017-Ohio-5644, ¶ 25 (11th Dist.), citing *In re Memic*, 2006-Ohio-6346, ¶ 25 (11th Dist.). "'The term "abuse of discretion" is one of art, "connoting judgment exercised by a court, which does not comport with reason or the record."'" *Id.*, quoting *In re V.M.B.*, 2013-Ohio-4298, ¶ 26 (11th Dist.), quoting *State v. Underwood*, 2009-Ohio-2089, ¶ 30 (11th Dist.).

{¶10} "The Ohio Supreme Court has recognized that 'parents who are suitable persons have a "paramount" right to the custody of their minor children.'" *In re J.F.*, 2011-

Case No. 2025-A-0008

Ohio-3295, ¶ 39 (11th Dist.), quoting *Murray* at 157. "However, '[a] juvenile court adjudication of abuse, neglect, or dependency is a determination about the care and condition of a child and implicitly involves a determination of the unsuitability of the child's custodial and/or noncustodial parents.'" *Id.*, quoting *In re C.R.*, 2006-Ohio-1191, paragraph two of the syllabus. "Accordingly, 'the *fundamental* or *primary* inquiry at the dispositional phase of . . . juvenile proceedings is not whether the parents of a previously adjudicated "dependent" child are either fit or unfit,' rather, it is 'the best interests and welfare of the child [that] are of paramount importance.'" *Id.*, quoting *In re Cunningham*, 59 Ohio St.2d 100, 106 (1979) (emphasis in original); *In re D.A.*, 2007-Ohio-1105, ¶ 11 ("[o]nce the case reaches the disposition phase, the best interest of the child controls").

{¶11} "No specific test or set of criteria has been delineated to guide the juvenile court in determining a child's best interests as it relates to an award of temporary custody under R.C. 2151.353." *D.C.R.* at ¶ 23, citing *Memic* at ¶ 26. "As a result, the juvenile court '"should consider the totality of the circumstances, including, to the extent they are applicable, the best interest factors set forth in R.C. 3109.04(F)."'" *Id.*, quoting *Memic* at ¶ 26, quoting *In re Pryor*, 86 Ohio App.3d 327, 336 (4th Dist. 1993).

{¶12} Mother asserts that the juvenile court did not properly apply the best-interest factors in R.C. 3109.04 because it did not mention them in its dispositional entry. However, "R.C. 2151.353 does not *require* a court to expressly consider or balance these factors in order for a custody award to be considered valid." (Emphasis in original.) *Memic*, 2006-Ohio-6346, at ¶ 31 (11th Dist.), citing *Pryor* at 336. Moreover, we find no merit with Mother's contention that it was an abuse of discretion for the juvenile court to award temporary custody of O.P. to ACCSB without mentioning Mother's testimony in its

Case No. 2025-A-0008

dispositional entry. It is evident that the juvenile court placed a heavy emphasis on the relevant factors in R.C. 3109.04(F)(1), which include:

> (c) The child's interaction and interrelationship with the child's parents, siblings, and any other person who may significantly affect the child's best interest;
>
> (d) The child's adjustment to the child's home, school, and community;
>
> (e) The mental and physical health of all persons involved in the situation[.]

{¶13} The juvenile court found that "the minor child is in an out of home placement, non-relative kinship, and doing very well. The minor child's speech has improved, she is reading now, bed wetting has stopped[,] and all of her appointments are being kept." The court concluded, "The long term goals are permanency for the minor child, and a grant of Temporary Custody to ACCSB at this time is in the best interest of this child, and is necessary to achieve permanency. . . . The Court finds neither Mother, nor Father, are suitable dispositional options at this time; and therefore, their respective dispositional requests for legal custody should be denied."

{¶14} There is substantial evidence in the record to support the juvenile court's findings.

{¶15} Marcia Bitting, a pediatric developmental behavior nurse practitioner with the Cleveland Clinic, testified at the adjudication hearing. She testified that in October 2023, O.P. was diagnosed with autism spectrum disorder, attention deficit hyperactive disorder, speech and language delays, sleeping concerns, sensory processing difficulty, a lack of coordination and motor development, a global developmental delay, an avoidant restrictive food disorder, and a BMI ("body mass index") greater than 99.99 percent. During that same time, O.P. had hypertension, her blood pressure, triglycerides, and cholesterol levels were high, her blood sugar was in the pre-diabetic range, and she had

Case No. 2025-A-0008

problems with bowel and urine control.  According to Nurse Bitting, O.P. weighed 121 pounds in June 2023, when she was almost six years old.  O.P. started to lose weight while in foster care, rectifying some of her medical issues, but she regressed when she returned to Father's care and increased her weight even higher.  Nurse Bitting testified to the difficulties she had working with Father due to his own health issues and O.P.'s defiant attitude.  Nurse Bitting also testified that she was unable to work with Mother because Mother would not communicate regarding O.P.'s diagnosis; she met with Mother only once and had to end the meeting after an hour because Mother was screaming and yelling and would not listen.

{¶16}  At the dispositional hearing, Christy Osborne, an ACCSB Caseworker Supervisor, testified to the court-ordered forensic parenting evaluation, which was conducted by Dr. Farshid Afsarifard.  The parties agreed to admit the evaluation in its entirety as a joint exhibit.  The evaluation concluded that both parents have serious psychological and emotional needs and parenting deficits; any changes to O.P.'s placement should be made with caution; and if reunification is discussed, it should be with Father and visits should be extended over time.  The evaluation recommended that Father work with a family and child therapist that can educate him on parenting skills of children with autism and that Mother should not be granted unsupervised visitation with O.P. until Mother obtains a counselor and the counselor recommends unsupervised visitation.  Ms. Osborne also testified that O.P. has made improvements while in her non-relative kinship placement.  For instance, her bedwetting has stopped, she has no signs of sleep apnea, and she routinely attends her appointments.  Ms. Osborne recommended that O.P. continue in her current placement and noted that she was trying to find service providers to help Father with the recommendations in Dr. Afsarifard's evaluation.

Case No. 2025-A-0008

{¶17} O.P.'s guardian ad litem, Ariana Tarighati, testified that she met with Mother twice, once at her home and once during a visit with O.P., and that both times Mother was rude, intimidating, and yelling. Mother would not cooperate during the visits and threatened to have the guardian ad litem arrested.

{¶18} Mother testified in support of her motion for legal custody. Her testimony reveals that she cares deeply for her daughter but has a lack of understanding of the severity of O.P.'s medical conditions and special needs, and of why ACCSB is involved in the care and custody of her child. Mother's responses were often irrelevant to the questions put before her and, at times, rambling.

{¶19} In sum, given the testimony of the caseworker and nurse practitioner, the stipulated forensic parenting evaluation, and Mother's own testimony, we do not find that it was an abuse of discretion for the juvenile court to determine that it was in O.P.'s best interest to award temporary custody to ACCSB. This decision was neither unreasonable, arbitrary, nor unconscionable.

{¶20} Mother's sole assigned error is without merit, and the juvenile court's judgment is affirmed.


ROBERT J. PATTON, P.J.,

SCOTT LYNCH, J.,

concur.

Case No. 2025-A-0008

# JUDGMENT ENTRY

For the reasons stated in the opinion of this court, appellant's assignment of error is without merit. It is the judgment and order of this court that the judgment of the Ashtabula County Court of Common Pleas, Juvenile Division, is affirmed.

Costs to be taxed against appellant.

_____
JUDGE MATT LYNCH

_____
PRESIDING JUDGE ROBERT J. PATTON,
concurs

_____
JUDGE SCOTT LYNCH,
concurs

**THIS DOCUMENT CONSTITUTES A FINAL JUDGMENT ENTRY**

A certified copy of this opinion and judgment entry shall constitute the mandate pursuant to Rule 27 of the Ohio Rules of Appellate Procedure.

Case No. 2025-A-0008